**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THERESA F.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>*Defendant*. | Case No. 24-cv-00142<br><br>Hon. Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Theresa F.'s[1] application for Disability Insurance Benefits ("DIB"). This case was assigned to the Hon. Beth W. Jantz in accordance with Local Rule 73.1(c). For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. 13) is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 17) is GRANTED. The Court affirms the Commissioner's final decision.

**BACKGROUND**

Plaintiff Theresa F. filed an application for DIB under Title II on August 20, 2021[2], alleging disability beginning March 31, 2021. (R. 186–87.) The claim was denied initially on February 7, 2022, and upon reconsideration on November 16, 2022. (*Id.* at 64–69, 71–76.) At Plaintiff's request, Administrative Law Judge George Gaffaney held a telephonic hearing on June 16, 2023, at which Plaintiff, her representative, and a vocational expert appeared and testified. (*Id*. at 33–

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] While the ALJ's decision states the claimant filed her application on July 8, 2021 (R. 15), the Court can only locate an application dated August 20, 2021 in the administrative record.

63.) At the hearing, the vocational expert classified Plaintiff's past work as security guard, DOT 372.667-034, a semiskilled occupation generally performed at the light exertional level but performed by Plaintiff at the medium exertional level. (*Id.* at 59–61.)

The ALJ issued an unfavorable decision on July 19, 2023. (R. 12–27.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 18.) At step two, the ALJ found severe impairments of degenerative disc disease of the lumbar spine and obesity. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*) The ALJ then determined that Plaintiff had the residual functional capacity to perform light work with no climbing of ladders, ropes, or scaffolds, and with frequent climbing of ramps and stairs, stooping, kneeling, balancing, crouching, and crawling. (*Id.* at 19.) At step four, relying on the vocational expert's testimony, the ALJ found that Plaintiff could perform her past relevant work as a security guard as generally performed and therefore was not disabled. (*Id.* at 26.) The ALJ also considered a post-hearing vocational assessment from Carrie Benchich, who characterized Plaintiff's past work as a composite job involving security guard and material handler duties, but the ALJ rejected that conclusion as inconsistent with the hearing vocational expert's testimony and the vocational assessments at the initial and reconsideration levels. (*Id.* at 26–27.)

The Appeals Council denied review on November 29, 2023, making the ALJ's decision the Commissioner's final decision. (R. 1–3.) Plaintiff commenced this action under 42 U.S.C. § 405(g), and the matter is now before this Court for judicial review. (*See generally* Dkt. 1.)

## DISCUSSION

### I. Standard of Review

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th

1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## II. The ALJ's Decision Was Supported by Substantial Evidence

Plaintiff raises two challenges to the ALJ's decision. Plaintiff contends that the ALJ: (1) improperly evaluated the opinions of Dr. Nathan Bounyong and Nurse Virginia Pierce; and (2) misclassified her past relevant work as "security guard" rather than treating it as a composite job involving package-handling duties. (Dkt. 13 at 6, 11.) As discussed below, because the ALJ's decision was supported by substantial evidence, the Court affirms the Commissioner's decision. *See Warnell*, 97 F.4th at 1052 ("We affirm an ALJ's decision denying disability benefits so long as it is supported by substantial evidence.").

### A. The ALJ's Evaluation of the Medical Opinions

For claims filed on or after March 27, 2017, the ALJ does not defer to or give any specific evidentiary weight to any medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(a). Rather, the ALJ must articulate how persuasive he finds all such opinions and

findings in the record. 20 C.F.R. § 404.1520c(b). In evaluating persuasiveness, the most important factors are supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(b)(2); *see Cain v. Bisignano*, 148 F.4th 490, 496–97 (7th Cir. 2025). Here, the ALJ did so.

**1. Dr. Bounyong's Opinions**

The ALJ found Dr. Bounyong's two physical-capacity assessments unpersuasive, with adequate explanation. In January 2023, Dr. Bounyong limited Plaintiff to two hours of standing or walking in an eight-hour workday, required her to recline two to four times during the workday, anticipated off-task behavior exceeding twenty-five percent of the workday, and predicted more than four absences per month. (R. 404–07.) In March 2023, he reduced Plaintiff's standing and walking capacity to less than one hour, limited her to lifting less than ten pounds, and stated that she would need a cane or walker daily when pain flared. (*Id.* at 453–54.)

The ALJ addressed supportability by noting that Dr. Bounyong had only a limited treatment history with Plaintiff when he issued the assessments. (R. 22, 24.) Dr. Bounyong completed the first physical assessment on the same day he first saw Plaintiff when Plaintiff presented for disability paperwork. (*Id.* at 24, 404.) The ALJ also found that Dr. Bounyong's own examination findings were limited and did not explain Dr. Bounyong's most restrictive conclusions, including the assessment that Plaintiff would be off task more than one-quarter of the workday and absent more than four days per month. (*Id.* at 25.) Although the record contains abnormal findings, including restricted lumbar motion, positive straight-leg-raise testing, paravertebral tenderness, and reported difficulty squatting or stooping, those findings support only *some* functional limitation. (*Id.* at 22, 421.) However, they do not, without further explanation, compel the extreme limitations that Dr. Bounyong assessed. An ALJ may find an opinion less persuasive when the source

identifies symptoms or diagnoses but does not explain how they translate into the specific work-related restrictions assessed. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1068–69 (7th Cir. 2023).

The ALJ likewise adequately addressed consistency. He acknowledged evidence favorable to Plaintiff, including antalgic gait, positive straight-leg-raise testing, reduced lumbar range of motion, difficulty squatting, and paraspinal tenderness. (R. 22–23.) But the record also showed preserved strength, sensation, and reflexes; the ability to walk without an assistive device during <u>*both*</u> consultative examinations; no finding that a cane or walker was medically necessary; only moderate degenerative changes on imaging; treatment consisting primarily of medication; and referrals that Plaintiff did not pursue. (*Id.* at 21–23, 358–360, 381–383.) The ALJ did more than vaguely assert "that the opinion is inconsistent with the objective medical findings." (Dkt. 13 at 13 (internal quotation marks omitted).) He considered Plaintiff's limited treatment history along with the objective findings, the lack of a medically necessary assistive device, and the mismatch between the examination findings and the extreme restrictions that Dr. Bounyong assessed. (R. 21–23.) That was the sort of weighing of competing evidence the ALJ was supposed to do. *Bakke*, 62 F.4th at 1067.

Plaintiff, in her brief, identifies evidence that <u>*could*</u> support Dr. Bounyong's opinions. (Dkt. 13 at 12–13.) That is not enough, however. The ALJ addressed the significant abnormal findings, explained why they did not support the most extreme limitations, and relied on evidence a reasonable mind could accept as adequate. The Court may not reweigh that evidence or substitute its judgment for the ALJ's. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000). Substantial evidence therefore supports the ALJ's evaluation of Dr. Bounyong's opinions. *See Warnell*, 97 F.4th at 1052.

**2. APRN-CNP Pierce's Opinion**

The ALJ also reasonably evaluated Virginia Pierce's, M.S., APRN-CNP, opinion. APRN-CNP Pierce reviewed the record and opined that Plaintiff required the ability to alternate between sitting and standing at will and required a cane for ambulation. (R. 25, 484.) As Plaintiff notes, in coming to her conclusions, APRN-CNP Pierce relied on a summary of Plaintiff's medical history, Plaintiff's antalgic gait, positive straight-leg-raise testing, restricted lumbar motion, and degenerative changes on imaging. (Dkt. 13 at 13–14; R. 484–89.) But, the ALJ did not summarily disregard that review. He acknowledged the limitations that APRN-CNP Pierce proposed and explained why he found them unsupported. (R. 25.)

As to the cane limitation, the ALJ noted that no provider prescribed a cane or other assistive device, no examiner documented Plaintiff using one, and both consultative examinations showed that Plaintiff could ambulate without assistance. (R. 25, 359, 382.) Although Plaintiff exhibited an antalgic gait, the ALJ reasonably concluded that this finding did not establish the medical necessity of a cane because the consultative examinations also documented unsupported ambulation, preserved strength, and intact sensation and reflexes. (*Id.* at 21, 359–60, 382–83.) The issue was not whether Plaintiff had difficulty walking, but whether the record supported this particular ***additional*** restriction requiring a cane for ambulation.

The ALJ also reasonably declined to adopt an unrestricted sit-stand option. APRN-CNP Pierce stated that Plaintiff needed to change positions at will to alleviate back pain, but she did not quantify how often Plaintiff would need to change positions, how many hours Plaintiff would be able to stand or walk during a typical workday, or how that limitation fit within Plaintiff's overall work capacity. (R. 25, 489.) The ALJ noted that no examination documented a need to change positions, no diagnostic or examination finding required an at-will restriction, and the record

generally suggested that Plaintiff's sciatica was managed with medications. (*Id*. at 25.) Those observations sufficiently addressed whether APRN-CNP Pierce's proposed restriction was consistent with the other medical evidence. Although APRN-CNP Pierce identified abnormal findings that could support some additional limitations, including antalgic gait, positive straight-leg-raise testing, restricted lumbar motion, and degenerative changes on imaging (*id.* at 489), she did not explain how those findings established that Plaintiff needed to alternate between sitting and standing at will throughout the workday. *See Bakke*, 62 F.4th at 1068 (an ALJ need not accept a medical source's interpretation of the record where the ALJ explains why the proposed limitations are inconsistent with other evidence). That omission bears directly on supportability, which examines whether the source's own objective medical evidence and explanations support the assessed limitations. *See Cain*, 148 F.4th at 497. An ALJ may discount an opinion when the source lists medical findings but does not explain how they support the proposed work limits. *See Bakke*, 62 F.4th at 1068–69 (rejecting a medical opinion where the physician "failed to explain the *link* between the medical evidence she listed and the recommended work restrictions.").

The ALJ also was not required to discuss every detail in APRN-CNP Pierce's narrative or repeat each piece of evidence bearing on consistency. ALJs are subject to only minimal articulation requirements, so long as they confront contrary evidence and provide a logical path from the evidence to the conclusion. *See Cain*, 148 F.4th at 496. The ALJ did so here. He identified the proposed cane and at-will sit-stand limitations, addressed the evidence that APRN-CNP Pierce relied upon, and explained why those limitations were not supported by the record as a whole. (R. 25.) Substantial evidence therefore supports his finding that APRN-CNP Pierce's opinion was not persuasive. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021).

All told, the ALJ did not reject the medical opinions with boilerplate assertions or by ignoring abnormal findings. He considered the explanations and objective support for each opinion, compared the proposed restrictions with the longitudinal record, and explained why the evidence supported the RFC assessed. That analysis satisfies 20 C.F.R. § 404.1520c and permits meaningful judicial review. *See Warnell*, 97 F.4th at 1052–53.

**B. The ALJ's Past-Relevant-Work Finding**

Plaintiff next argues that the ALJ erred at step four by finding that she could perform her past relevant work as a security guard as generally performed. A vocational expert may provide evidence about the physical and mental demands of a claimant's past relevant work, both "as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). If the claimant has the RFC to perform past relevant work, the Commissioner determines that the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). Past relevant work generally includes work performed within the prior five years that lasted long enough for the claimant to learn it and constituted substantial gainful activity. 20 C.F.R. § 404.1560(a)(1).

Substantial evidence supports the ALJ's step-four finding. Plaintiff testified that her residential security or concierge work included package-related duties, including moving packages into storage rooms and delivering them, and that some packages were heavy. (R. 42–45.) The vocational expert heard that testimony and classified the work as security guard, DOT 372.667-034, a semiskilled occupation generally performed at the light exertional level but actually performed by Plaintiff at the medium exertional level. (*Id.* at 26, 59–60.) The ALJ accepted that distinction and found that Plaintiff could perform the occupation as generally performed, though not as she actually performed it. (*Id.*) That distinction answers Plaintiff's principal objection. The vocational expert did not disregard Plaintiff's testimony about heavy lifting; she accounted for it by

classifying Plaintiff's actual job at the medium level. (*Id.*) The ALJ then compared Plaintiff's RFC for a restricted range of light work with the demands of the occupation as generally performed and accepted the vocational expert's testimony that Plaintiff could perform it. (*Id.*) The regulations permit that process. 20 C.F.R. § 404.1560(b)(2).

Nor does the post-hearing vocational opinion compel a different result. Plaintiff submitted an assessment from Carrie Benchich, who characterized Plaintiff's past work as a composite job combining security guard and material handler. (R. 323–24.) The ALJ expressly considered that opinion and rejected it because it conflicted with the hearing vocational expert's testimony and the vocational assessments at the initial and reconsideration levels, all three of which classified Plaintiff's past work as security guard. (*Id.* at 27, 68, 75–76.) Resolving any perceived conflict in the vocational evidence was for the ALJ, not the Court. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) ("[The Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination." (citations and quotations omitted)). Plaintiff contends that package handling was significant enough to make the job something other than security guard. (Dkt. 13 at 9–10.) But the ALJ did consider that stance; he just ultimately found the vocational evidence classifying the work as security guard more persuasive while recognizing that Plaintiff had performed it at a higher exertional level. (R. 26, 59–60.) In essence, Plaintiff's position merely asks the Court to prefer her contrary opinion and interpretation of the job duties. When viewed from the angle of the substantial evidence standard, that is not a basis for remand. *See Warnell*, 97 F.4th at 1052.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. 13) is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 17) is GRANTED. The Court affirms the Commissioner's final decision.

SO ORDERED.

DATED: September 30, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge